(C. D. 1016)

S. A. HARAM ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 27, 1946)

Strauss & Hedges; Barnes, Richardson & Colburn (*Hadley S. King* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: These are protests against the assessment of duty by the collector on certain cheeses at the rate of 7 cents per pound, but not less than 35 per centum ad valorem under paragraph 710 of the Tariff Act of 1930. It is claimed that the merchandise is properly dutiable at 5 cents per pound, but not less than 20 per centum ad

valorem under the same paragraph, as modified by the trade agreement with Finland, T. D. 48554, as cheese having the eye formation characteristic of the Swiss or Emmenthaler type.

Protests of S. A. Haram listed in plaintiff's exhibit 1; protests of Norse Produce Co., listed in plaintiff's exhibit 3; and protests of Westergaard Berg-Johnsen Co. listed in plaintiff's exhibit 4, were consolidated for trial and the case was limited to the types of cheeses on these lists.

Nils Oscar Ohlson, a partner in the firm of S. A. Haram Co., Martin Solberg of the Norse Produce Co., and Borge Westergaard of the Westergaard Berg-Johnsen Co., each testified as to the merchandise imported by his concern. They were shown a photograph of a piece of cheese and each stated that the eye formation found therein was similar to that found in the imported cheeses. This photograph was received in evidence and marked "Plaintiff's Exhibit 2." It had previously been marked "Exhibit A" in Suit 4447 (*United States* v. *Wheeler & Miller*, 32 C. C. P. A. 22, C. A. D. 280) wherein the Court of Customs and Patent Appeals held that the cheese involved had the eye formation characteristic of the Swiss or Emmenthaler type.

Mr. Ohlson further testified that the size of the eye in Swiss cheese produced in Switzerland[1] varied according to the quality, the formation being smaller in the poorer grades; that the holes in Switzerland cheese were three-quarters of an inch in diameter, were globular and glossy, and appeared throughout the cheese.

Mr. Westergaard testified that the eyes in Switzerland cheese were globular and smooth in the inside and were about one-half to three-quarters of an inch in diameter, sometimes larger and sometimes smaller, and appeared mostly in the middle of the cheese and not toward the rind. He also said that the holes in the cheese he imported were about one-quarter to three-eighths of an inch in diameter, but that some of the holes in defendant's illustrative exhibit A which he identified as "a Swiss cheese"[2] were as small as one-quarter to three-eighths of an inch in diameter.

Defendant called Adolph Christian Dolder, secretary of the Switzerland Cheese Association, who stated that he had visited cheese factories; had observed Switzerland cheese being produced; had read text books on its manufacture; and had consulted bacteriologists and cheese makers. The witness then described in detail the process of manufacturing Switzerland cheese, showing that the eye formation is the result of the action of certain bacteria in the cheese. There were admitted into evidence defendant's illustrative exhibit B, a wax

[1] In order to avoid confusion, Swiss cheese produced in Switzerland will be hereinafter referred to as Switzerland cheese and cheeses of the Swiss type produced elsewhere will be referred to as Swiss cheese.

[2] The photograph was copyrighted by a photographer in Zürich and is marked Switzerland Cheese Association, Inc.

model of Switzerland cheese in various stages of development, and defendant's illustrative exhibit C, a model of a quarter loaf of Switzerland cheese. On cross-examination, Mr. Dolder stated that defendant's illustrative exhibit B was made to represent the fine product of Switzerland and then identified two holes, marked "A" and "B" on the photograph, as being about one-quarter of an inch in diameter. He also testified that Swiss or Emmenthaler type cheese is made in practically every country that is suitable for milk production; that in poorer qualities of Switzerland cheese there is a greater number of small holes; and that only first quality Switzerland cheese is exported to the United States.

The defendant then called several witnesses who had handled Switzerland cheese from 20 to 40 years. As to the size of the eye formation characteristic of Swiss cheese, Frederick Rohner testified that it varied from that of a dime to that of a fifty-cent piece; Edward C. Galle that it ranged from one-half inch to two inches; and Otto Roethlisberger that it was about the size of a walnut.

Mr. Rohner also stated that the eye formation of the cheese pictured in plaintiff's exhibit 2 was not characteristic of Swiss cheese, but that he had bought domestic Swiss cheese having holes about one-quarter of an inch in size. Mr. Galle, on being shown plaintiff's exhibit 2, testified that while the globular part of the holes was characteristic of Swiss cheese, the size of the eyes was small, but that Swiss cheese produced in the United States has the eye formation shown in plaintiff's exhibit 2. Mr. Roethlisberger stated that the eye formation shown on plaintiff's exhibit 2 was not characteristic of the Swiss or Emmenthaler type cheese because the eyes were too small; that he had imported some of the type cheeses listed in plaintiff's exhibit 4 and that they did not have the eye formation characteristic of Switzerland cheese because they had small pin-point holes; that cheese with the small eye formation as in plaintiff's exhibit 2 is second-grade cheese of the Swiss or Emmenthaler type; and that he had seen domestic Swiss cheese with the eye formation shown in plaintiff's exhibit 2..

Defendant also called Walter Hochstrasser, who testified that he had studied dairying in agricultural schools in Switzerland and had received a master's degree in cheese making from Cornell University; that he had taught cheese making at Cornell for 2 years; and that he had handled Swiss cheese for various concerns for some 16 years and was familiar with the eye formation of Swiss cheese. On being shown plaintiff's exhibit 2, he stated that the eye formation of the cheese depicted therein was not characteristic of Swiss or Emmenthaler type cheese because the eyes were too small, there were too few of them, and some were elongated. He identified a photograph as that of a very fine piece of Switzerland cheese and the same was received

in evidence as defendant's illustrative exhibit E. He compared this exhibit with plaintiff's exhibit 2, stating that the holes in defendant's illustrative exhibit E were larger and better distributed and that there were no gas holes, cracks, or elongated eyes. He further stated that generally in Switzerland cheese a small collection of salt water or brine is found in the bottom of the hole, and that the size of the eye should come within the range of two-fifths to four-fifths of an inch. He also testified that in manufacturing Switzerland cheese, the growth of the eye-forming bacteria is encouraged; that the bacteria digest the sugar and protein in the cheese and form carbon dioxide which expands and forms the holes. He stated that the holes in the cheese in plaintiff's exhibit 2 were also produced by gas expansion but not necessarily by the same bacteria; and that he had seen Swiss or Emmenthaler type cheese produced in the United States having the eye formation similar to that shown in plaintiff's exhibit 2.

The chief issue herein is whether the decrease in rate of duty included in the trade agreement with Finland, T. D. 48554, is confined to cheese having the large eye formation characteristic of Switzerland cheese. The record indicates that defendant's witnesses did not think that the cheese depicted in plaintiff's exhibit 2 had the eye formation characteristic of Swiss cheese because the eyes were too small and some were elongated. However, they agreed that they had seen domestic Swiss cheese similar to plaintiff's exhibit 2 and one said that such cheese is called second-grade cheese of the Swiss or Emmenthaler type.

The record also shows that Swiss type cheese is produced in most countries suitable for milk production and it is obvious that the trade negotiators did not intend to limit the rate reduction to Switzerland cheese since the trade agreement was made with Finland.

In *United States* v. *Wheeler & Miller*, 32 C. C. P. A. 22, C. A. D. 280, it was held that "Danish loaf cheese," having eyes ranging up to one-third of an inch in diameter, was dutiable at 5 cents per pound under paragraph 710 of the Tariff Act of 1930, as modified by the Finnish Trade Agreement. The court said (p. 26):

As was held by the trial court, the framers of the paragraph in controversy made no limitation as to the size of the eye, nor did they say that the imported article should have the eye formation of either *imported* Swiss cheese or any particular quality or grade of Swiss or Emmenthaler cheese. They provided for a *type* of cheese, namely, any cheese "having the eye formation characteristic of the Swiss or Emmenthaler type." According to the record, the instant cheese compares favorably, in respects with which we are concerned here, with the cheese imported from Finland. It is inconceivable that our Government would make an agreement with Finland to let Finnish cheese in at 2 cents less per pound than was then provided for by the statute and intend to extend the provision only to imports from Finland of cheese which meets all the requirements of "genuine" Swiss

or Emmenthaler cheese imported from Switzerland. If imported cheese must contain eyes which are from ½ inch to 2½ or 3 inches in diameter, it is at once apparent that no small cheeses like that at bar, slightly over 3 inches in thickness, could possibly meet the requirement. There is nothing in connection with this case that would suggest that the framers of the trade agreement contemplated that the importations from Finland should be so limited as to exclude small cheeses. [Italics quoted.]

· The plaintiffs in the instant case stated that the cheeses they imported had eye formations similar to those in the cheese depicted in plaintiff's exhibit 2. That exhibit is the same photograph that was in evidence in *United States* v. *Wheeler & Miller, supra.* The court held that the merchandise in that case had the eye formation characteristic of Swiss or Emmenthaler type cheese; therefore, the cheese in the instant case having similar eye formations must also be held to fall within that classification.

We hold, therefore, that the merchandise listed in plaintiff's exhibits 1, 3, and 4 is properly dutiable at 5 cents per pound, but not less than 20 per centum ad valorem under paragraph 710 of the Tariff Act of 1930, as modified by the trade agreement with Finland, T. D. 48554. The protests are sustained and judgment will be rendered accordingly.